TRULINCS 26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

--------------------------------------------------------------------------------

FROM: 26019112
TO:
SUBJECT: Rule 33 Motion
DATE: 01/08/2024 04:58:23 PM

Jesus Eric Carasco, Pro Se
Register NO.: 26019-112
MDC Brooklyn
80 29th Street
Brooklyn, NY 11232



FILED
CLERK, U.S. DISTRICT COURT

JAN 17 2024

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
    PLAINTIFF,

    Vs.

JESUS ERIC CARASCO,
    DEFENDANT

CASE NO.: 8:19-CR-00169-JVS
MOTION FOR NEW TRIAL
(Fed. R. Crim. P. 33)

Jesus Eric Carasco moves this Court under Rule 33 of the Federal Rules of Criminal Procedure for an order granting defendant remand of the case.

Grounds for Relief

Jesus Eric Carasco is entitled to a new trial on the grounds of newly discovered evidence regarding the validity of the search warrants and the credibility of the government witnesses. As more fully shown in the accompanying memorandum, Affidavit of Jesus Eric Carasco, and attachments:

1. Despite due diligence in the pretrial investigation of this case and considerable efforts to discover and obtain the use of all relevant evidence in this matter, Jesus Eric Carasco was ignorant and unable to present certain evidence at trial.

2. In particular, a response from the Victorville District Superior Court confirms that the purported search warrants in the case were fabricated; and an investigation by Internal Affairs at the San Bernardino County Sheriff's Office sustained nine separate findings of misconduct on the part of the arresting officers, that they repeatedly and blatantly gave inconsistent and/or inaccurate testimony at trial and undermines their credibility. These search warrants, together with the officers' testimony, led to nearly all of the evidence presented by the government at trial.

3. The newly discovered evidence was discovered after the verdict was returned in this case, when (a) defense received a response to the defense's letter from the Victorville District Superior Court (attachment C) on September 28th, 2023, (b) defense received a response from the San Bernardino County Sheriff's Department Internal Affairs (see attachment E) on July 27th, 2022.

4. The newly discovered evidence contains clear and convincing support for the defendant's claims with respect to the purported warrants for the apartment search that produced all of the evidence presented at trial; namely that (a) the original warrant purportedly issued by judge Lisa Rogan does not in fact exist in any San Bernardino Court, (b) the judge Debra Harris warrant did not have any listed probable cause or associated transcripts of the request and was issued fourteen months after the search, (c) a document purporting to be the Lisa Rogan warrant was edited over a year after the search to include the warrant number from the Debra Harris warrant, (d) the search warrant return and receipt for the warrants were created fourteen months after the search, and (e) that the receipts allegedly tying Mr. Carasco to the apartment were not in fact found in the apartment (see attached memorandum).

5. These warrants were fabricated by the San Bernardino County Special Enforcement Division (S.W.A.T. Team), who also conducted the search and seizure and arrested Mr. Carasco as cross-sworn US Marshals. Those same officers then acted as the primary witnesses for the government at trial. After an investigation prompted by the defendant's allegations, the Internal Affairs response sustained and confirmed nine allegations made by the defense in this case, including that the law enforcement officers who arrested the defendant failed to file search warrant returns, assaulted him, and failed to properly handle nearly all of the evidence and recordings, repeatedly violating policy and the law while doing so. Furthermore, the Internal Affairs

TRULINCS 26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

-----------------------------------------------------------------------------------------------------------------

response confirms that as witnesses at trial, the officers repeatedly told untruths, undermining their credibility as witnesses and the testimony that they gave. That testimony, together with the tainted fruits of their search and seizure, represented essentially all of the evidence presented to the jury on which Mr. Carasco was convicted. The purported confession of Mr. Carasco was introduced through testimony of those same officers (Dep. Awad and Dep. Nicassio), and--like much of the rest of Mr. Carasco's arrest--the officers conveniently failed to record this nonexistent confession. As such, the newly discovered evidence is not merely cumulative of evidence already in the record, or merely impeaching in character, but is material and of such character that if received at the trial it would probably have resulted in a different verdict.

6. The original purported search warrant (attachment A, the "Lisa Rogan warrant" purportedly issued April 15th 2019) was missing a warrant number, warrant ID number, and time of issuance. The response from the Victorville District Superior Court confirmed that the only version of the purported Lisa Rogan warrant on file copied the warrant number from a different search warrant issued fourteen months later (attachment C, the "Debra Harris warrant", warrant number VVSW 20-1275) and was still missing a warrant number. The Debra Harris warrant, in turn, had no probable cause listed, no transcript or recording of the search warrant request, and as mentioned was issued more than one year after the search took place. In addition, the Internal Affairs response sustained the defense's allegation that the officer on the purported search warrant "failed to complete and submit a search warrant return within ten days". As such, it is abundantly clear that no warrant was properly filed at the time of the search, or even within the next year, and that the documents produced to the defense and the Government purporting to be search warrants were instead fabricated.

7. In addition, the Internal Affairs investigation confirmed that much of the testimony given by the government's witnesses was false. The investigation found that "Deputy Nicassio failed to submit his audio belt recording of [Mr. Carasco's purported] Miranda interview into evidence," despite Mr. Nicassio's testimony at court about that purported recording:
Q:You didn't break California state law?
A: No, sir.
Q: Or department policies? You're under oath.
A: I didn't break policy. (Dkt 152, Page ID #:1115. See also Dkt 154, Page ID #:1336, lines 4-9.)

The sustained finding by the investigation shows that Dep. Nicassio's testimony was perjurious with respect to the exact (nonexistent) recording on which the officers testified that Mr. Carasco confessed. In addition, the investigation found that the officers "failed to submit seized ammunition into evidence," "failed to ensure that [Mr. Carasco] received a pre-booking medical examination after the use of less-lethal munition" and "failed to document [Mr. Carasco's] injuries on [his] booking application" while arresting Mr. Carasco. (Attachment E.)

8. The Internal Affairs investigation sustains five separate findings of the officers failing to submit purported objects into evidence, on top of the fabricated search warrants and a recording by Lt. Joshua Smith played at trial that was never submitted into evidence (government exhibit 22) and without any initial reports. In fact, the officers appear to have searched the apartment under false pretenses in the first place: the apartment that was searched was not in fact rented by Mr. Carasco; instead, it was rented by Jesse Gonzalez. Mr. Gonzalez was a real person (Dkt 154 Page ID #:1344-1346; Dkt 156, Page ID #:1517, lines 9-10), and paid for the apartment via a check from his bank account (attachment D) and presented his identification to the building management (Dkt 154, page ID #:1344-1346). And yet, prosecution elicited testimony from Dep. Nicassio that falsely referred to the owner of the apartment--a real person--as an "alias" for Mr. Carasco (Dkt 154, Page ID #:1344), and Dep. Nicassio falsely claimed it was paid for in cash by Mr. Carasco (Dkt 154, Page ID #:1346). The officers then falsely claimed to find Mr. Carasco's receipts in the apartment (see memorandum). Based on this anticipated testimony, the prosecutors told the jury in their opening argument that Mr. Carasco rented the apartment with an alias (Dkt 154, page ID #1217).

Direct examination of Dep. Nicassio by the prosecution:
Q: And you also know from your discussion with the apartment manager that the defendant used an alias to rent that apartment out?
A: Yes, sir.
Recross examination of Dep. Nicassio:
A: There was no information or no receipts or no documentation that Jesse Gonzalez lived there.
...
A: I stated that the name Jesse Gonzalez was used to rent the apartment.
Q: Is Jesse Gonzalez a real person?
A: I believe so
...
A: It wasn't until I showed her your picture that she said that's the guy that actually came in and rented the apartment.
...

TRULINCS  26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

--------------------------------------------------------------------------------------

Q: She said cash was used?
A: Yes, sir (Dkt 154, Page ID #:1344-1346)

9. The prosecution's case relied chiefly on evidence purportedly obtained via these search warrants, and on testimony from the officers as witnesses.  In addition, the Court instructed the jury that the search warrants were valid and properly obtained, and that the associated evidence was to be fully considered by them (Dkt 154, Page ID #:1154; Dkt 156, Page ID #:1355, 1356, 1366, 1367; Dkt 158, Page ID #: 1551)--directly leading to the conviction by using evidence that was in fact obtained artificially. Without that evidence from the search or testimony from those same officers, it is highly likely that there would not have been sufficient evidence to convict Mr. Carasco.

Legal Argument

Despite the ongoing direct appeal, this Court can and should entertain this motion under the authority of United States v. Cronic, 466 U.S 648, 667 & n.42, 104 S. Ct. 2039, L. Ed. 2d 657 (1984), where the Supreme Court found that the District Court could signal its intention to grant a Rule 33 motion to the Court of Appeals.  ("The District Court has jurisdiction to entertain the motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case.")  See also, e.g. United States v. Douglas, 874 F .2d 1145, 1162 (7th Cir. 1989); United States v. Draper, 746 F .2d 662, 666 (10th Cir 1984).  The Federal Rules of Criminal Procedure Rule 33 states in part that "a motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgement, but if an appeal is pending the court may grant the motion only on remand of the case."  While the rule prohibits the district court from granting a Rule 33 motion while the case is on direct appeal, it does not prohibit the court from entertaining the motion.  To do so, it should certify that determination to the appellate court in order that the appellate court may entertain a motion to remand.  See, e.g., United States v. Ellison, 7 Cir. 1977, 557 F .2d 128, 132; United States v. Hays, 9 Cir. 1972, 454 F .2d 274, 275.

CONCLUSION

Either the fabricated search warrants, or the purjurious testimony from the government's witnesses, would be sufficient grounds for a new trial; together they undermine the entire case against Mr. Carasco.  As such, it is appropriate for the Court to reasses the character of the evidence against Mr. Carasco and the credibility of the witnesses at trial. The taint on the trial, along with Dep. Nicassio's willingness to lie under oath, have been exposed and his credibility has been irreparably damaged. Therefore, for the foregoing reasons, Mr. Carasco respectfully moves for the Court to certify its intention to grant the motion to the Court of Appeals of the 9th Cir. for remand of the case.

Papers Supporting Motion

This motion is based on this document and the Affidavit of Jesus Eric Carasco, and all of the pleadings, papers, and other records on file in this action.

Respectfully submitted,
/s/Jesus Eric Carasco

TRULINCS  26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

----------------------------------------------------------------------------------------------------

FROM: 26019112
TO:
SUBJECT: MEMORANDOM
DATE: 01/08/2024 04:56:01 PM

JESUS ERIC CARASCO REG:. NO: 26019-112 PRO SE
MDC BROOKLYN
P.O. BOX 329002
BROOKLYN, NY. 11232

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMIRICA,
       Plaintiff,

    V.                                            MEMORANDUM
JESUS ERIC CARASCO,                      IN SUPPORT OF MOTION FOR NEW TRIAL
       Defendant,                              (Fed. R. Crim. P. 33)

Below are further facts supporting the defendant's motion for consideration of a new trial under Rule 33.  It is submitted with regards to the new evidence discovered by the defense after trial concluded, chiefly including a response from the Victorville Superior Court, an internal affairs investigation of the San Bernardino Sheriff's Department, and a response from the San Bernardino Superior Court.  Together, these undermine the authenticity of the search warrants that produced nearly all of the physical evidence at trial, the credibility and truthfulness of the testimony of the Government's primary witnesses, and the Louis Vuitton receipts allegedly tying Mr. Carasco to the apartment that was searched.  Each of the purported search warrants and the testimony came from the defendant's arresting officers with the San Bernardino Sheriff's Department.

1. As further laid out in the associated motion and affidavit, the purported search warrants that were used to search the apartment were fabricated.

2. In addition to failing to have a valid search warrant for the apartment, the apartment was not in fact rented by Mr. Carasco. Instead, it was rented from the building by a different individual--in particular, by Jesse Gonzalez. It was also paid for by Mr. Gonzalez, and it was Mr. Gonzalez's ID on file with the building. Nonetheless, essentially all of the physical evidence presented by the Government at Mr. Carasco's trial--including, importantly, the drugs--were seized from that apartment. In order to attempt to tie Mr. Carasco to Mr. Gonzalez's apartment, the arresting officers gave confusing and misleading testimony, attempting to suggest--falsely--that Mr. Carasco had rented and paid for it in cash. (See associated motion, #8.)

3. Aside from that misleading testimony, the only evidence presented at trial that Mr. Carasco was in fact living in the apartment were a set of receipts with his name on them that were allegedly found in the apartment (the Louis Vuitton Receipts, Government exhibits 4 and 15). From Dep. Nicassio's direct testimony by the Government (Dkt 154, Page ID #:1269-1271):

Q: And did you personally see and collect those receipts from the apartment?
A: Yes, sir.
...
Q: Can you tell me -- well, just generally describe what we're looking at here, Deputy Nicassio
A: It's a receipt for Louis Vuitton, and this one looks like it was for a $290 T-shirt.
Q: And whose name is on the receipt as the purchaser?
A: Jesse Carasco

Q: Do you recognize that, Deputy Nicassio?
A: Yes.  It's another receipt.
Q: And did you find that receipt in the apartment as well?
A: Yes, sir.
...
Q: Just like we did with the Louis Vuitton receipt, can you tell me what merchandiser that is?
A: Boutique Men.  It looks like a Dandelion Spike black bag with a price tag of $1,515.
Q: And who's the purchaser reflected on this receipt?
A: Mr. Jesse Carasco.
Q: So this along with the Louis Vuitton receipts were found in the apartment?
A: Yes, sir.

TRULINCS 26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

--------------------------------------------------------------------------------------------------------

4. However, the defense has maintained that those Louis Vuitton receipts were not in fact found in Mr. Gonzalez's apartment; which would mean that, while Mr. Carasco was a guest at the apartment, the receipts would do nothing to tie Mr. Carasco to ownership or control of any contraband in the apartment. See, e.g., Dkt 154, Page ID#: 1269, lines 22-23.

5. Newly discovered evidence by the defense resolves this disagreement in favor of the defendant: that the Louis Vuitton receipts were not, in fact, discovered in the apartment, despite Mr. Nicassio's testimony that they were. The Victorville Superior Court's response (received September 28th 2023) included two relevant documents: the search warrant return, and the search warrant receipt. (Attachment C.)

6. The search warrant return, filled out by Dep. Andrew Pollick of the San Bernardino County Sheriff's Department, lists the items found at the apartment--bills containing Jennifer Tapia's information, scales, a pistol, US currency, and suspected drugs. Nowhere does it mention, reference, or allow for, the possibility that Louis Vuitton receipts with Mr. Carasco's name on them were found in the apartment. And, as Mr. Carasco was the target of their investigation, search, and arrest, those receipts would have clearly been relevant, had then in fact been found there.

7. The search warrant receipt, filled out by Dep. Nicassio, also lists the items taken from the apartment. Similarly to the search warrant return, it lists bills, scales, a pistol, and currency; and similarly to the search warrant return, there is no mention of any receipts with Mr. Carasco's name on them, from Louis Vuitton or anywhere else.

8. This directly contradicts testimony from Dep. Nicassio himself that he found the Louis Vuitton receipts with Mr. Carasco's name on them in the apartment. And this cannot be a case of confusion between Dep. Nicassio and his teammates, as Dep. Nicassio testified that he himself found the Louis Vuitton receipts, and Dep. Nicassio himself wrote the search warrant receipt. As Mr. Carasco was the target of their investigation, search, and arrest, those receipts would clearly have been relevant and recorded on the search warrant return and receipt, had then in fact been found there. And, indeed, Dep. Nicassio testified at trial that his search warrant receipt specified the items seized in the search "in detail" (Dkt 154, Page ID #1341, lines 17-20):

Q: Is it true that California state law states that when a deputy writes a receipt [for a search warrant] he is to specify in detail before leaving that receipt?
A: And I did that, sir.

9. As such, the sole remaining piece of evidence clearly tying Mr. Carasco to the apartment was in fact false testimony given by Dep. Nicassio, and is undermined by Dep. Nicassio's own reports, in addition to those of his teammates. Mr. Carasco was convicted of intent to distribute the drugs that were found in the apartment--and so breaking the tie between Mr. Carasco and the apartment undermines the conviction.

10. In addition to the fabricated search warrant for the apartment allegedly associated with Mr. Carasco, there are serious concerns with the purported search warrant that Dep. Nicassio sent to OnStar in order to locate a vehicle. On September 7th 2023, the San Bernardino Superior Court's office responded to a request from Mr. Carasco in regards to the purported OnStar warrant (attachment F). Similarly to the purported Judge Lisa Rogan search warrant, the purported OnStar search warrant is missing a warrant number and warrant ID number; as such, Court Clerk Stephanie McHenry confirmed that the San Bernardino Court was unable to locate any actually filed versions of the warrant. In addition, a comparison of the purported signature in the OnStar Warrant with authentic signatures (sourced online) from Judge William Powell raises further concerns around the authenticity of this purported warrant. See both signatures in exhibit D, particularly the 'P' and 'll' in 'Powell'. Finally, Manuel Medina's declaration confirms the courts did not have the warrant (attachment D).

11. It is worth reviewing the timeline of purported evidence that led to Mr. Carasco's arrest and conviction. The arresting officers reached out to OnStar to request Mr. Carasco's location, sending to OnStar a fake search warrant that was never requested or filed in any court, and which thus did not have any warrant number, warrant ID number, etc. They then arrived at an apartment rented out by someone who isn't Mr. Carasco. They purport that they spoke to the building's management and were told Mr. Carasco rented it out in cash, even though the building's files actually confirm that it was Mr. Gonzalez who rented the apartment and paid for it from his bank account. They then seized items from the apartment (which was not Mr. Carasco's) with another fabricated search warrant--the Judge Lisa Rogan warrant--which, like the fake OnStar warrant, did not have any warrant number or warrant ID number, and seems never to have actually been issued. Despite this, the officers repeatedly testified at trial that they did in fact have a valid search warrant for the apartment. Meanwhile, downstairs in the parking lot, the officers shot Mr. Carasco with "less-lethal rounds" and beat him while he was already on the ground handcuffed, as has now been sustained by the internal affairs investigation; the officers then omitted this entirely from their reports of the arrest. The officers upstairs in the apartment proceeded to seize a number of items. Photographic evidence shows that they seized roughly $10,000 worth of currency, although somehow only $5,000 of that ends up being delivered to the sheriff's station. And despite

TRULINCS  26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

---------------------------------------------------------------------------------------------------

Dep. Nicassio's false testimony that the money was found on Mr. Carasco, Det. Eugean Mondragon's testimony, along with the search warrant return and receipt, confirm it was actually found in the apartment.  The officers claim at trial that Louis Vuitton receipts with Mr. Carasco's name on them were found in the apartment, but photographic evidence and multiple contemporaneous reports all confirm that these receipts were not in fact found in the apartment--in fact, _nothing_ with Mr. Carasco's name appears to have been found in the apartment, just as his name, ID, and bank account were _not_ in fact those which the leasing office had on file.  After arresting Mr. Carasco, the officers allege that he confessed to the charges in this trial, but cannot produce any evidence of this alleged confession, as they claim that their recording devices accidentally deleted the purported confession.  In fact, the officers didn't book a single recording from Mr. Carasco's arrest into evidence: every single officer on the arrest now reports that their various recording devices failed, were accidentally forgotten, or somehow automatically deleted their contents; as such, they did not book any recordings of their conversations with the building's management (who requested to see the search warrant), their search of the apartment, their assault and beating of Mr. Carasco, Dep. Nicassio's purported Miranda reading to Mr. Carasco, or Mr. Carasco's alleged confession into evidence (as has also been sustained by the internal affairs investigation).  The only audio files that appears to exist from that day showed up over a year later without ever having been mentioned, reported on, or booked into evidence at the time, and exist solely from one officer's belt recording device--Lt. Smith, who is no longer with the San Bernardino County Sheriff's Department. Two years after Mr. Carasco's arrest, he was convicted--and sentenced to 30 years in prison--based on charges that he was intending to distribute the drugs found in the apartment which he didn't actually rent, seized with a fabricated search warrant, and tied to Mr. Carasco by false testimony by the arresting officers about the payment for the apartment and about receipts that were not actually found in the apartment.

12. The entire timeline of misconduct and false testimony by Mr. Carasco's arresting officers has been substantiated by the newly discovered evidence--the search warrant responses from the Victorville and San Bernardino Superior Courts; and the internal affairs investigation into those officers which sustained nine separate findings of misconduct stemming from Mr. Carasco's arrest.  In 2021, however, when Mr. Carasco was convicted, the jury was informed that those search warrants were valid and obtained properly, and heard extensive (false) testimony from Mr. Carasco's arresting officers.  Just calling into question the validity of one of the search warrants, or of one of the Government's primary witnesses, would potentially be sufficient to warrant a new trial, and for the District Court to certify as such to the Appellate Court, such that the Appellate Court may entertain a motion to remand this case.  Given that in fact all of them have been undermined, Mr. Carasco respectfully moves this Court to certify its determination to the Appellate Court for remand of the case.

Respectfully submitted
/s/ Jesus Eric Carasco

TRULINCS 26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

--------------------------------------------------------------------------------

FROM: 26019112
TO:
SUBJECT: Rule 33 affidavit
DATE: 01/08/2024 04:32:04 PM

JESUS ERIC CARASCO Pro Se
RegisterNo.: 26019-112
Metropolitan Detention Center Brooklyn
80 29th Street
Brooklyn, NY 11232

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
    Plaintiff,

    vs.

JESUS ERIC CARASCO,
    Defendant

AFFIDAVIT IN SUPPORT OF
MOTION FOR NEW TRIAL
( Crim. R. 33.1)

AFFIDAVIT OF Jesus Eric Carasco, being duly sworn, deposes and states:

1. I am Jesus Eric Carasco and am over 18 years of age. I reside at MDC Brooklyn, 80 29th Street, Brooklyn, NY 11232. I am fully competent to make this affidavit and I have personal knowledge of the facts stated in this affidavit.

2. I am the defendant acting Pro Se.

3. Jesus Eric Carasco was charged and tried for possession and intent to distribute heroin and cocaine following his arrest on April 15th, 2019.

4. The defendant was tried on these charges, and on October 14th 2021, a verdict of guilty was returned.

5. In order to render this verdict, the jury must have found that the defendant possessed drugs based on the evidence produced by purported search warrants--including one purportedly issued by Judge Lisa Rogan on April 15th 2019 and another purportedly issued by Judge Debra Harris in 2020--along with trial testimony from Mr. Carasco's arresting officers.

6. The evidence used against Mr. Carasco at trial was obtained as a result of two purported search warrants sought by members of the San Bernardino Sheriff's Department. At issue here is one of those warrants (see attachment A, Bates CARASCO_000037-41). This was purportedly issued by Judge Lisa Rogan on April 15th 2019, but was missing a warrant number, warrant ID number, and time of issuance. Since the time that the verdict was returned, I have discovered the existence of crucial evidence on that very issue.

6. I sent a letter to the Victorville Superior Court requesting certified original copies of the entire search warrants in the instant case (attachment B). The Victorville Court's response (attachment C) instead included a new purported search warrant (warrant number VVSW 20-1275 and warrant ID number 000038580), issued by a different judge (Judge Debra Harris), on June 11th 2020--fourteen months after Mr. Carasco's arrest--and without any probable cause listed or transcript of request. Furthermore, the Victorville Court's response included an edited copy of the original purported search warrant (the Lisa Rogan warrant) with the warrant number and warrant ID number copied over from the Debra Harris warrant--which, again, was issued fourteen months after the Lisa Rogan warrant.

7. The fact that the Victorville Superior Court failed to find any record of the original warrant, transcript, warrant number, warrant ID number or a copy of the form of the warrant that was purportedly issued by Judge Lisa Rogan supports the warrant being fabricated and not legally obtained. Instead, I was given a warrant issued by a different Judge over a year later; the warrant number from that warrant was then grafted onto a version of the Lisa Rogan warrant. Furthermore, the search warrant return and receipt sent by the Victorville Superior Court confirm that the Louis Vuitton receipts allegedly tying Mr. Carasco to the apartment were not in fact found there (see memorandum).

TRULINCS 26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

--------------------------------------------------------------------------------

8. I also requested the probable cause that is required under California Penal Code 1525 pertaining the search warrant given under the hand of Judge Debra Harris, and the transcript that is required by California Penal Code 1526. The Court had neither a probable cause, nor a transcript, filed. All of this is consistent with both search warrants being fabricated and not legally obtained.

9. On September 28th, 2023, I received a response from the Court Executive Officer and Deputy Gabriela Gamiz Cinco, which states: "THE DOCUMENT TO WHICH THIS CERTIFICATION IS ATTACHED IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE ATTEST ANABEL Z ROMERO Clerk of the Superior Court of the State of California, in and for the County of San Bernardino. Date Sep. 28, 2023 by Gabriela Gamiz Cinco Deputy." As explained above, the search warrant that was provided by the Clerk (with Judge Debra Harris' name on it) is in fact not the original warrant on file that was given under the hand of Judge Lisa Rogan on April 15, 2019, nor does it comport with California Law penal code 1529. The original search warrant does not exist. Furthermore, this is consistent with Attorney Alex R. Kessel's (officer of the Court) email to the AUSA Andrew Beshai which states: "The law demands that the original warrant be lodged with the issuing Court Clerk's Office (Victorville). My office has inquired and no San Bernardino Court Clerk's office has the original warrant on file. I invite you to inquire". (Attachments C and D.)

10. I could not have, despite the exercise of reasonable diligence, discovered the existence of this evidence or presented it at any earlier time, because--while Mr. Carasco did raise concerns with the search warrants at trial--his requests for a hearing on the matter were denied and the Rule 16 discovery material did not contain the clear and convincing evidence of the warrants' falsity that was later produced by the Victorville Superior Court. Furthermore, the defense needed to wait for the San Bernardino Sheriff's Department's internal investigation to partially conclude before it could receive the response sustaining nine of their allegations (attachment E).

11. The existence of this new evidence was first brought to my attention on September 28th 2023 by the Victorville Superior Court. As explained, for the reasons set forth in paragraph 10 of this Affidavit, I reasonably believed I had thoroughly investigated the possibilities for all such evidence.

12. Exhibit C shows that the existence of this evidence was first discovered on September 28th 2023, when the Victorville Superior Court responded to the defense's inquiry.

10. This evidence is not cumulative of any evidence in this record because it confirms the falsity of search warrants from which this Court admitted evidence at trial and undermines essentially all of the government's evidence.

11. This evidence is not merely impeaching because it confirms the falsity of the search warrants based on the official governmental records and an internal affairs investigation bearing directly on the evidence in this case.

12. It is my opinion that this evidence will prove sufficiently persuasive to produce a different verdict than the one previously rendered, and that it would be a miscarriage of justice if a new trial is not granted.

Signed by me on January 3rd 2024 at MDC Brooklyn, 80 29th Street Brooklyn NY 11232.

/s/ Jesus Eric Carasco

Jesus Eric Carasco
SUBSCRIBED AND SWORN TO BEFORE ME ON JANUARY 8th 2024 at MDC Brooklyn, 80 29th Street Brooklyn NY 11232.

STEPHEN A. ESPINET
Notary Public, State of New York
No. 01ES6194593
Qualified in Kings County
Commission Expires October 6, 20 24

Notary Public in and for the state of 10/06/2024. Kings

My commission expires 10/06/2024.

Attachment A

| | Warrant No. |
|---|---|

**SUPERIOR COURT OF CALIFORNIA**
County of San Bernardino

**SEARCH WARRANT**
Probable Cause Warrant to Search
(Penal Code Section 1524)

Report #: 131901070

**SEARCH WARRANT AND AFFIDAVIT**

**AFFIDAVIT**

I, Deputy Andrew Pollick, swear under oath that the facts expressed by me in the attached and incorporated Statement of Probable Cause are true and that based therein I have probable cause to believe and do believe that the articles, property, and persons described below may be lawfully seized pursuant to Penal Code Section 1524, as indicated below, and is now located at the location(s) set forth below. Wherefore, I request that this Search Warrant be issued.

_(Signature of Affiant)_

HOBBS SEALING REQUESTED:    ☐ YES  ☒ NO
NIGHT SEARCH REQUESTED:    ☐ YES  ☒ NO

**SEARCH WARRANT**

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICEMAN OR PEACE OFFICER IN THE COUNTY OF SAN BERNARDINO: proof by affidavit, under penalty of perjury, having been made before me by Deputy Andrew Pollick that there is probable cause to believe that the property or person described herein may be found at the location(s) set forth herein and that it is lawfully sizeable pursuant to Penal Code Section 1524 et seq., as indicated below by "☒"(s), in that:

☐ it was stolen or embezzled;

☒ it was used as the means of committing a felony;

☒ it is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery;

☒ it tends to show that a felony has been committed or that a particular person has committed a felony;

☐ it tends to show that sexual exploitation of a child, in violation of Penal Code Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring;

☒ an arrest warrant has been issued for __Jesus, Eric, Carasco 01/28/78____;

☐ a provider of electronic communication service or remote computing service has records of evidence, as specified in Penal Code Section 1524.3, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in possession of any person with intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery;

1

Exihibit A1
Fabiracted

CARASCO_000037

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

1818 S State College Boulevard apartment #350, Anaheim, Ca 92806. This location is described as a multi-building apartment complex with a multi-level underground parking structure. The building is tan with a grey roof. Apartment #350 is located on the third floor on the north side of the building. The apartment is labeled with "350".

Black 2018 Cadillac Escalade 4-door utility vehicle, California license 8FLB018. The vehicle is located at 1818 S State College Boulevard parking space #268, located in Anaheim, Ca 92806. The parking stall is labeled with "268".

**FOR THE FOLLOWING PROPERTY:**

The apartment including but not limited too; any firearms and or any illegal weapons, ammunition, narcotics, containers of any kind within the apartment including any safes, vaults, or any other locked containers located inside the apartment.

The vehicle including but not limited too; firearms and or any illegal weapons, ammunition, narcotics, containers of any kind within the vehicle including any safes, vaults, or any other locked containers located inside the vehicle.

**AND TO SEIZE IT IF FOUND** and bring it before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to and subscribed before me this 15th day of April, 2019. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

NIGHT SEARCH APPROVED: ☐ YES  ☒ NO

_____
(Signature of Magistrate)
Judge of the Superior Court, High Desert Judicial District

2

Exhibit A2

CARASCO_000038

**EXPERTISE OF AFFIANT:**

Your affiant (hereafter referred to as "I" or "me") Deputy A. Pollick is a duly sworn Deputy Sheriff for the County of San Bernardino, State of California, and has been regularly employed in such capacity since March 2014. During this time I completed the San Bernardino County Sheriff's Department Basic Academy and have worked in either a custodial or patrol capacity. I am currently assigned to the Specialized Enforcement Division as a Deputy.

I have attended the San Bernardino County Sheriff's Basic Law Enforcement Academy for a period of twenty three weeks. I have attended on the job training, in-service training, seminars, workshops, classes; in arrest and firearms, narcotic investigations, sexual assaults, child abuse, jail operations, missing persons, search warrants, vehicle theft, police community relations, DUI investigations, domestic violence, juvenile violence and case preparation.

I have over the course of my employment as a peace officer spoken to suspects involved in various crimes. Through these conversations I have learned many of the mannerism, habits, and methods of operation, involved in all types of crimes.

I have received training and made arrests in crimes such as: Burglaries, thefts, stolen property, search and seizure; crimes against persons including rape, assault with a deadly weapon, assault and battery, homicide, and other law enforcement related matters including drug related crimes.

Furthermore, I have worked with, received informal training from, and consulted with seasoned officers, experienced investigators, and supervisors.

I have also experienced, and learned, that subjects who have conducted similar activity often possessed the fruits of the crime or evidence to show the location of the fruits of the crime. Therefore, it would be reasonable to believe that the property outlined in the "Statement of Probable Cause" would be located at the place to be searched. I believe the recovery of the requested property will corroborate other evidence collected to satisfy the corpus delicti of the alleged crime(s).

3

Exhibit A3

CARASCO_000039

## STATEMENT OF PROBABLE CAUSE

On March 13, 2019, at approximately 0330 hours, Carasco contacted his former girlfriend via cell phone. Carasco sent his former girlfriend a video of himself firing a firearm through the sunroof of his moving vehicle and made threats of harm to her. The victim was in fear for her safety prompting her to notify Highland station patrol units to respond to her residence. While Highland units were in the area, they observed Carasco's vehicle arrive to the victim's residence. Deputies attempted to stop Carasco, however Carasco led Highland deputies on a vehicle pursuit. Carasco fled the vehicle on foot and was not apprehended. During a search of Carasco's vehicle, two spent 9mm cartridge cases were located inside the vehicle as well as a fanny pack containing approximately half pound of suspected cocaine and large quantity of suspected heroin. Carasco and the firearm are still outstanding.

After learning Carasco was a fugitive from New York with extensive violent criminal history, a documented gang member and armed with a firearm, the Specialized Enforcement Division was contacted to assist in the apprehension of Carasco. During the investigation, I learned Carasco's child's mother resides in Anaheim and has a 2018 Cadillac Escalade in her name. Through investigation, the vehicle was located at 1818 S State College Boulevard in the city of Anaheim. Believing Carasco was residing with his child's mother, Anaheim Police Department was asked to assist.

On April 10, 2019, Anaheim Police Department Detective McClintock drove through the underground parking structure at 1818 S State College Boulevard. Detective McClintock observed a black Cadillac Escalade SUV with attached license plates CA / 8FLB018 backed into parking space #268. During surveillance, Detective McClintock observed Carasco enter the vehicle and drive around the parking structure before re-parking in space #268. When Carasco exited his vehicle, he was seen looking in several other vehicles. Based on Detective McClintock's observations, he believes Carasco was conducting counter surveillance techniques.

Deputies from the Specialized Enforcement Division later arrived at the location and learned the address was an apartment complex. After speaking with the apartment management, they confirmed Carasco resides in apartment #350 and is assigned parking space #268. The apartment is rented to a I████ G██████ who is an associate of Carasco.

A search of the interior of the apartment and vehicle for firearms may yield additional evidence to aid deputies in our investigation and has potential to lead to additional victims and/or unsolved crimes.

**YOUR AFFIANT DECLARES UNDER PENALTY OF PERJURY**, under the laws of the State of California that this Affidavit is true and correct.

Date: April 15, 2019

_Andrew Pollick_
**Andrew Pollick, Deputy**

4

Exhibit A4

CARASCO_000040

## ATTACHMENT 'A'

**Definition: Electronic Storage Devices & Hardware**

Electronic storage devices consist of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar transmission, reception, collection and storage of data.

Electronic storage device includes (but is not limited to) any wireless/cellular telephone, cordless telephone, pager, fax machine, digital camera, audio recorder, video recorder and any data-processing device e.g. central processing units, memory typewriters, self- contained "laptop", "notebook", "mini-notebook", or "personal data assistant" computers.

Internal and external storage devices e.g. fixed disks (hard drives), memory cards, floppy disk, LS-120, zip drive, jaz drive, Orb drive, CD drive, DVD drive, diskettes, tape drives, optical storage devices, transistor-like binary devices, and other memory storage devices including the storage media used in the devices. Peripheral input/output device e.g. as keyboards, printers, scanners, plotters, video display monitors, optical readers.

Related communication devices e.g. modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices. Any device, mechanism, or parts that can be used to restrict access to electronic storage devices e.g. physical keys and locks bio metric readers, retinal scanners, facial recognition, signature verification, smart card or voice authentication.

**Software**

Computer/Equipment software (digital information) can be interpreted by electronic storage device equipment, computers and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communication programs.

**Documentation**

Electronic storage device documentation consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use electronic storage device hardware, software, or other related items.

**Passwords and Data Security Devices**

Electronic storage device passwords and other data security devices are designed to restrict access to or hide software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

A password (a string of alphanumeric characters) usually operates as a sort of digital key to "unlock" particular data security devices.

Data security hardware may include encryption devices, chips, dongles, biometric readers, retina scanners, facial recognition systems, voice authentication systems, hand writing authentication systems and circuit boards.

Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.



CARASCO_000041

Attachment B

TRULINCS  26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

---------------------------------------------------------------------------------------

FROM: 26019112
TO: ~~Taylor, Jennifer~~
SUBJECT: CERTIFIED DOCUMENT VERIFICATION
DATE: 09/12/2023 10:43:32 PM

To: VICTORVILLE DISTRICT CRIMINAL DIVISION

    To whom it may concern, this is a formal request for copies regarding certified document verification in regards to the authenticity of the following Search Warrant (See attached documents Bates 37-41) that was purportedly signed by Magistrate Judge Lisa Rogan on April 15, 2019 with the San Bernardino Superior Court Victorville California. I also request copies of the transcript and/or transcribed pertaining to the Search Warrant of Lisa Rogan that is required by California Law Penal Code 1526. I also request that your office produce the original Search Warrant Number that was purportedly given by Magistrate Judge Lisa Rogan and /or the Warrant ID number. I also request the form of the Search Warrant that is required by Penal Code 1529 under Chapter 3 of Search warrants.

    Secondly, I request the court clerk office to provide copies of the entire Search Warrant that was given under the hand of Magistrate Judge Debra Harris from June 11, 2020 (See attached document Bates 138). I also request the Probable Cause that is required under California Penal Code 1525 pertaining to this Search Warrant given by Debra Harris. I also request the transcript and/or the transcribe that is required by California Penal Code 1526.

                                        Sincerely,
                                        /s/ Jesus Carasco Pro Se

Attachment C

**OFFICIAL RECEIPT**
SUPERIOR COURT OF CALIFORNIA -
COUNTY OF SAN BERNARDINO
Victorville District
14455 Civic Drive
Suite 100
Victorville, CA 92392

GET ONLINE, NOT INLINE
www.sb-court.org

Receipt No.  **VI-2023-0007505**
Transaction Date  09/28/2023
Payor
JESUS CARASCO

| Description | Amount Paid |
|---|---|
| Miscellaneous Payment | |
| Certification Copy Fee | 40.00 |
| **SUBTOTAL** | **40.00** |
| **PAYMENT TOTAL** | **40.00** |
| Check (Ref #2863445023) | 40.00 |
| Tendered | |
| Total Tendered | **40.00** |
| Change | 0.00 |

09/28/2023        Cashier DDer
09:20 AM           Station VIWS040

Audit
55766900

**OFFICIAL RECEIPT**

---

**OFFICIAL RECEIPT**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
Victorville District
14455 Civic Drive
Suite 100
Victorville, CA 92392

GET ONLINE, NOT INLINE
www.sb-court.org

Receipt No.  **VI-2023-0007506**
Transaction Date  09/28/2023
Payor
JESUS CARASCO

| Description | Amount Paid |
|---|---|
| Miscellaneous Payment | |
| FCP.- Copy Fee | 5.00 |
| **SUBTOTAL** | **5.00** |
| **PAYMENT TOTAL** | **5.00** |
| Check (Ref #2863445034) | 5.00 |
| Tendered | |
| Total Tendered | **5.00** |
| Change | 0.00 |

09/28/2023        Cashier DDer
09:21 AM           Station VIWS040

Audit
55766907

**OFFICIAL RECEIPT**



THE DOCUMENT TO WHICH THIS CERTIFICATION IS
ATTACHED IS A FULL, TRUE AND CORRECT COPY OF
THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE.
ATTEST _____ANABEL Z. ROMERO_____
Clerk of the Superior Court of the State of
California, in and for the County of
San Bernardino.
Date _____SEP 2 8 2023_____

By _____ Deputy
Gabriela Gamiz Cinco

VVSW 20-1275

STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

## RETURN TO SEARCH WARRANT

The following property was taken from sJesus Eric Carasco 01/28/78 and seized pursuant to Penal Code
Section 1524 by virtue of a Search Warrant dated April 15, 2019, and executed by the Honorable Judge
Lisa Rogan of the Superior/Municipal Court, High Desert Judicial District, County of San Bernardino,
State of California.

**ITEMS SEIZED:**
- Bills Containing Jennifer Tapia's Information (Jesus Carasco's girlfriend)
- Digital Scales
- Black semi-automatic pistol - PF9400 Poly Mero Inc. P88
- U.S currency in multiple denomination
- (Refer to SBSD IRNET Division for confinscated suspected heroin/cocain.)

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
VICTORVILLE DISTRICT

JUN 1 1 2020

BY _Wendy Barnes_
WENDY BARNES, DEPUTY

I, Deputy Andrew Pollick of the San Bernardino County Sheriff's Department, by whom this Search
Warrant was executed, do swear that the above inventory contains a true and detailed account of all the
property taken by me under this warrant.

It is further requested that for the purpose of retaining custody of this property and conducting further
investigation and/or analysis of the property seized, that the court order the San Bernardino County
Sheriff's Department to retain the property until it is brought before the court for hearing or other
disposition, and/or that the San Bernardino County Sheriff's Department release the property to appropriate
investigators, victims, and/or laboratories for further investigation and analysis without further order of this
court.

_(signature)_
(Signature of Affiant)

Deputy Sheriff, San Bernardino County Sheriff's Department

_____
(Signature of Magistrate)

Judge of the Superior/Municipal Court, High Desert Judicial District, County of San Bernardino, State of
California

Subscribed and sworn to before me this __11TH__ day of __JUNE__ __,2020__.

Warrant ID: 000038580

Page 1 of 3

VVSW 20-1275

**San Bernardino County Sheriff's Department**
**SEARCH WARRANT RECEIPT**

SW No. _____

DR No. 131901070 /6090002?

On __04/15/19__ , an officer of the __SAN BERNARDINO COUNTY SHERIFF'S__ Department, served a search
warrant at the premises at __1818 S STATE COLLEGE BLVD #250, ANAHEIM__ and seized property
identified in this receipt.

The search warrant was issued on __041519__ , by the Honorable _____ , Judge of the
__SUPERIOR__ Court of the __VICTORVILLE__ Judicial District, County of San Bernardino,
State of California, and is filed under court number _____ (if no number provided, contact Clerk of the Court).

| ITEMS TAKEN |
| --- |

- BILL CONTAINING JENNIFER TAPIA'S INFORMATION
- SCALES ( PALM SCALE 8 )
- BLACK PISTOL 9MM - PF 9600
  POLY METRO INC
  P 88

- UNACCOUNTED CURRENCY

A copy of said receipt was delivered to __-POSTED-  JESUS CARASCO__ (or posted at the
aforementioned residence) prior to said officer leaving the premises . . . . . . . Items _____ through _____

__AWAD__ __F3069__          __NIKA SEDO__        __3789__
Officer           Emp. No.                 Witness            Emp. No.

Be advised that pursuant to California Penal Code sections 1539 and 1540, you may file a written motion in the court of the
above-mentioned Judge who issued the warrant, seeking return of the property seized pursuant to this warrant.

For further information, contact the above officer at __909-266-6570__ or, if you have further questions please
contact the above officer's supervisor __SGT. SMITH__ at _____ .

The below-signed acknowledges receipt of a copy of the inventory made by searching Officer relating to property seized
under the aforementioned Search Warrant.

__AWAD F3069__          __041519__
Name             Date

DISTRIBUTION:  Original — Officer
               Copy — Person in charge of/or to be left at scene

10-19479-401 Rev. 8/87

Warrant ID: 000038580

Page 2 of 3

**WARRANT NOTES**                                      VVSW 20-1275

(No Notes)

County of San Bernardino.

The people of the State of California to any peace officer in the County of San Bernardino:

Proof, by affidavit, having been this day made before me by telephone by the officer whose signature is affixed to the affidavit, that there is probable cause for believing that evidence tending to show that a felony (or felonies) has or have been committed, you are therefore commanded to make search on the person and/or property set forth in the description page and/or affidavit, which is incorporated by reference herein; and, in the case of a thing or things or personal property, if you find the same or any part thereof, to bring the thing or things or personal property forthwith before me at the courthouse of this Court.

Given under my hand, and issued at 09:14 on this 11th day of June, 2020

Hobbs Sealing Approved:  **NO**              Night Service Approved:  **NO**

Judge Debra Harris

**Warrant ID: 000038580**

**END OF WARRANT**



**SUPERIOR COURT OF CALIFORNIA**
**County of San Bernardino**

VVSW | Warrant No. 20-1275

**SEARCH WARRANT**
Probable Cause Warrant to Search
(Penal Code Section 1524)

Report #: 131901070

**SEARCH WARRANT AND AFFIDAVIT**

**AFFIDAVIT**

I, Deputy Andrew Pollick, swear under oath that the facts expressed by me in the attached and incorporated **Statement of Probable Cause** are true and that based therein I have probable cause to believe and do believe that the articles, property, and persons described below may be lawfully seized pursuant to Penal Code Section 1524, as indicated below, and is now located at the location(s) set forth below.   Wherefore, I request that this Search Warrant be issued.

_____
(Signature of Affiant)

HOBBS SEALING REQUESTED:    ☐ YES  ☒ NO
NIGHT SEARCH REQUESTED:      ☐ YES  ☒ NO

**SEARCH WARRANT**

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICEMAN OR PEACE OFFICER IN THE COUNTY OF SAN BERNARDINO:** proof by affidavit, under penalty of perjury, having been made before me by Deputy Andrew Pollick that there is probable cause to believe that the property or person described herein may be found at the location(s) set forth herein and that it is lawfully sizeable pursuant to Penal Code Section 1524 et seq., as indicated below by "☒"(s), in that:

☐   it was stolen or embezzled;

☒   it was used as the means of committing a felony;

☒   it is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery;

☒   it tends to show that a felony has been committed or that a particular person has committed a felony;

☐   it tends to show that sexual exploitation of a child, in violation of Penal Code Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring;

☒   an arrest warrant has been issued for ___Jesus, Eric, Carasco 01/28/78_____;

☐   a provider of electronic communication service or remote computing service has records of evidence, as specified in Penal Code Section 1524.3, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in possession of any person with intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery;

1

VVSW 20-1275

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

1818 S State College Boulevard apartment #350, Anaheim, Ca 92806. This location is described as a multi-building apartment complex with a multi-level underground parking structure. The building is tan with a grey roof. Apartment #350 is located on the third floor on the north side of the building. The apartment is labeled with "350".

Black 2018 Cadillac Escalade 4-door utility vehicle, California license 8FLB018. The vehicle is located at 1818 S State College Boulevard parking space #268, located in Anaheim, Ca 92806. The parking stall is labeled with "268".

**FOR THE FOLLOWING PROPERTY:**

The apartment including but not limited too; any firearms and or any illegal weapons, ammunition, narcotics, containers of any kind within the apartment including any safes, vaults, or any other locked containers located inside the apartment.

The vehicle including but not limited too;  firearms and or any illegal weapons, ammunition, narcotics, containers of any kind within the vehicle including any safes, vaults, or any other locked containers located inside the vehicle.

**AND TO SEIZE IT IF FOUND** and bring it before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to and subscribed before me this 15th day of April, 2019.  Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____              , NIGHT SEARCH APPROVED: ☐ **YES**   ☒ **NO**
        *(Signature of Magistrate)*

**Judge of the Superior Court, High Desert Judicial District**

2

WVSW 20-1275

## EXPERTISE OF AFFIANT:

Your affiant (hereafter referred to as "I" or "me") Deputy A. Pollick is a duly sworn Deputy Sheriff for the County of San Bernardino, State of California, and has been regularly employed in such capacity since March 2014. During this time I completed the San Bernardino County Sheriff's Department Basic Academy and have worked in either a custodial or patrol capacity. I am currently assigned to the Specialized Enforcement Division as a Deputy.

I have attended the San Bernardino County Sheriff's Basic Law Enforcement Academy for a period of twenty three weeks. I have attended on the job training, in-service training, seminars, workshops, classes; in arrest and firearms, narcotic investigations, sexual assaults, child abuse, jail operations, missing persons, search warrants, vehicle theft, police community relations, DUI investigations, domestic violence, juvenile violence and case preparation.

I have over the course of my employment as a peace officer spoken to suspects involved in various crimes. Through these conversations I have learned many of the mannerism, habits, and methods of operation, involved in all types of crimes.

I have received training and made arrests in crimes such as: Burglaries, thefts, stolen property, search and seizure; crimes against persons including rape, assault with a deadly weapon, assault and battery, homicide, and other law enforcement related matters including drug related crimes.

Furthermore, I have worked with, received informal training from, and consulted with seasoned officers, experienced investigators, and supervisors.

I have also experienced, and learned, that subjects who have conducted similar activity often possessed the fruits of the crime or evidence to show the location of the fruits of the crime. Therefore, it would be reasonable to believe that the property outlined in the "Statement of Probable Cause" would be located at the place to be searched. I believe the recovery of the requested property will corroborate other evidence collected to satisfy the corpus delicti of the alleged crime(s).

3

STATEMENT OF PROBABLE CAUSE        VVSW 20-1275

On March 13, 2019, at approximately 0330 hours, Carasco contacted his former girlfriend via cell phone. Carasco sent his former girlfriend a video of himself firing a firearm through the sunroof of his moving vehicle and made threats of harm to her. The victim was in fear for her safety prompting her to notify Highland station patrol units to respond to her residence. While Highland units were in the area, they observed Carasco's vehicle arrive to the victim's residence. Deputies attempted to stop Carasco, however Carasco led Highland deputies on a vehicle pursuit. Carasco fled the vehicle on foot and was not apprehended. During a search of Carasco's vehicle, two spent 9mm cartridge cases were located inside the vehicle as well as a fanny pack containing approximately half pound of suspected cocaine and large quantity of suspected heroin. Carasco and the firearm are still outstanding.

After learning Carasco was a fugitive from New York with extensive violent criminal history, a documented gang member and armed with a firearm, the Specialized Enforcement Division was contacted to assist in the apprehension of Carasco. During the investigation, I learned Carasco's child's mother resides in Anaheim and has a 2018 Cadillac Escalade in her name. Through investigation, the vehicle was located at 1818 S State College Boulevard in the city of Anaheim. Believing Carasco was residing with his child's mother, Anaheim Police Department was asked to assist.

On April 10, 2019, Anaheim Police Department Detective McClintock drove through the underground parking structure at 1818 S State College Boulevard. Detective McClintock observed a black Cadillac Escalade SUV with attached license plates CA / 8FLB018 backed into parking space #268. During surveillance, Detective McClintock observed Carasco enter the vehicle and drive around the parking structure before re-parking in space #268. When Carasco exited his vehicle, he was seen looking in several other vehicles. Based on Detective McClintock's observations, he believes Carasco was conducting counter surveillance techniques.

Deputies from the Specialized Enforcement Division later arrived at the location and learned the address was an apartment complex. After speaking with the apartment management, they confirmed Carasco resides in apartment #350 and is assigned parking space #268. The apartment is rented to a Jessie Gonzalez, who is an associate of Carasco.

A search of the interior of the apartment and vehicle for firearms may yield additional evidence to aid deputies in our investigation and has potential to lead to additional victims and/or unsolved crimes.

**YOUR AFFIANT DECLARES UNDER PENALTY OF PERJURY,** under the laws of the State of California that this Affidavit is true and correct.

_____              Date: <u>April 15, 2019</u>
Andrew Pollick, Deputy

4

**ATTACHMENT 'A'**

VVSW 20-1275

**Definition: Electronic Storage Devices & Hardware**

Electronic storage devices consist of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar transmission, reception, collection and storage of data.

Electronic storage device includes (but is not limited to) any wireless/cellular telephone, cordless telephone, pager, fax machine, digital camera, audio recorder, video recorder and any data-processing device e.g. central processing units, memory typewriters, self- contained "laptop", "notebook", "mini-notebook", or "personal data assistant" computers.

Internal and external storage devices e.g. fixed disks (hard drives), memory cards, floppy disk, LS-120, zip drive, jaz drive, Orb drive, CD drive, DVD drive, diskettes, tape drives, optical storage devices, transistor-like binary devices, and other memory storage devices including the storage media used in the devices. Peripheral input/output device e.g. as keyboards, printers, scanners, plotters, video display monitors, optical readers.

Related communication devices e.g. modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices. Any device, mechanism, or parts that can be used to restrict access to electronic storage devices e.g. physical keys and locks bio metric readers, retinal scanners, facial recognition, signature verification, smart card or voice authentication.

Software

Computer/Equipment software (digital information) can be interpreted by electronic storage device equipment, computers and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communication programs.

Documentation

Electronic storage device documentation consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use electronic storage device hardware, software, or other related items.

Passwords and Data Security Devices

Electronic storage device passwords and other data security devices are designed to restrict access to or hide software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

A password (a string of alphanumeric characters) usually operates as a sort of digital key to "unlock" particular data security devices.

Data security hardware may include encryption devices, chips, dongles, biometric readers, retina scanners, facial recognition systems, voice authentication systems, hand writing authentication systems and circuit boards.

Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt; compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

5

Attachment D

 Gmail                                    Alex Kessel <kessellawfirm@gmail.com>

# USA v. Jesus Carasco, Case No.: 19-cr-00169

1 message

**Alex Kessel** <kessellawfirm@gmail.com>                        Tue, Aug 3, 2021 at 12:27 PM
To: "Beshai, Andrew (USACAC)" <Andrew.beshai2@usdoj.gov>

Andrew,

I have had a chance to thoroughly review the discovery in this case. I have been representing criminal
defendants for almost 35 years. I have reviewed and contested hundreds of state search warrants in my
practice.
I can tell you the search warrant (Bates 139-143) in this case is very suspicious in regards to its authenticity,
content, and time of execution.

The search warrant has a number of defective aspects including:
1)   The form of the warrant does not comport with California Law.
2)   The copy of the warrant provided (Bates 208) has no warrant number noted on the warrant.
3)   The warrant does not contain the time it was purportedly signed by the magistrate which is
contrary to California law demanding that search warrants note the time of issuance (P.C. § 1526).
4)   The Return for the purported warrant was filed June 11, 2020, almost 14 months after its
purported execution and not within the 10 days required by California Penal Code Section 1524. This
fact is very suspicious and indicative of a search warrant being prepared later in time to the purported
search on April 15, 2019.
5)   The detectives appear to go back to another magistrate in June 2020 to seek approval for the
same warrant at issue. I invite you to review Bates 138, which appears to be part of a telephonic
warrant request. The warrant ID number is the same number used by the detectives on the untimely
filed search warrant return (See Bates 136). It appears Government Counsel requested the detectives
to produce a search warrant and return almost a year later and the detectives never properly obtained
a warrant to search the apartment in our case and needed to create search documents a year later.
Smells fishy.
6)   The law demands that the original warrant be lodged with the issuing court clerk's office
(Victorville). My office has inquired, and no San Bernardino Court Clerk's Office has the original
warrant on file. I invite you to inquire.
7)   The search warrant receipt (Bates 137) which has a different search warrant number, does not list
the drugs purportedly seized pursuant to a warrant on April 15, 2019.
8)   The time of execution (Approximately 12:30 p.m.) in Deputy Nicassio's reports (Bates 57) is
totally inconsistent with the detailed crime logs (Bates 60 and 61) which does not have the police
receiving the warrant until 12:47 p.m.
9)   The untimed warrant was purportedly received for execution at 12:47 in Anaheim, Orange
County. Presuming it would take some time to execute, locate and seize the drugs and firearm.
However, a report prepared by Deputy Daniel Garcia (Bates 32) noted he received the drugs and
other contraband from the search warrant in Orange County at the West Valley Detention Center in
San Bernardino at approximately 12:50 p.m. There is no way a warrant in Orange County can be
executed and 3 minutes later at 12:50 the seized items are at a jail facility which is at least an hour
drive from the search location. Sounds fishy!

These real and significant search warrant problems are compounded by the other issues in this case including
inconsistent statements in police reports, discrepancies in the amounts and locations of money seized, the

Exhibit C1

failure to follow department proc___ures with respect to booking evidence _____ conveniently destroying the audio tape purportedly containing the defendant's confession to Detective Nicassio.

       I suggest you speak with your supervisors about the real and material issues in this case which definitely affects the integrity of the Government's case against my client.

       I also request the Government produce the entire warrant for the signature page at Bates 138. I also request you produce the audio recording and transcript of the telephonic warrant signed by Judge Harris on June 11, 2020, which contains the same warrant ID Number as the purported warrant signed by a different judge on April 15, 2019. California Penal Code Section 1526 requires that a telephonic warrant be recorded and transcribed. Again, this all sounds and looks fishy.

       I rather be transparent in my assessment of the evidence and the clear and supported implications of unethical, illegal and untrustworthy conduct by the San Bernardino Sheriff's Department in this case.

       I will await your response.

Sincerely,
Alex R. Kessel
Law Offices of Alex R. Kessel
15910 Ventura Blvd., Suite 1030
Encino, CA 91436
P: (818) 995-1422
F: (818) 788-9408

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

Exhibit C2

Declaration of Manuel Medina

I, Manuel Medina declare,

1) I know in 2021 Jesus Carasco was convicted in federal court in Santa Ana, California of narcotic and firearm violations.

2) I also learned the evidence used against defendant Carasco was obtained as a result of two purported search warrants sought by members of the San Bernardino Sheriff's department. I learned defendant Carasco claimed each warrant was fabricated and fake.

3) On August 4, 2022 I went to the Criminal Clerk's Office at the Courthouses in Victorville and San Bernardino.

4) I specifically contacted the clerks in each Courthouse to obtain copies of the search warrants executed in defendant Carasco's case. I know one warrant was for GPS information from On Star. (See attachment "A"). The other warrant was purportedly for a search of an apartment unit in Orange County- California. (See attachment "B").

5) Both clerks advised me the law requires the search warrant to be filed with the Clerk of each Court after execution of each search warrant.

6) Both clerks advised me that upon their search in Court files, neither warrant was even filed with the Court as required by law.

7) I confirmed this information with a clerk by the name of Margaret in the Victorville Court and a Maria in the San Bernardino Courthouse.

8) It appears the detectives in defendant Carasco's case, violated the law and never properly lodged any search warrant with the Court.

9) My inability to obtain a copy of either warrant is consistent with the allegation that both search warrants are fake and were not legally obtained.

10) I also have recently read a letter dated July 27, 2022 that set forth findings from the San Bernardino County Sheriff's department indicating sustained findings of misconduct by the detectives for their conduct in defendant Carasco's criminal case. (See attachment "C").

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8·16·22

Declarant

Case 8:19-cr-00169-JVS    Document 184    Filed 01/17/24    Page 32 of 51    Page ID
#:1809
Case 8:21-cv-01344-JGB-PVC    Document 7    Filed 11/05/21    Page 70 of 71    Page ID #:135

00-53-3364B    11-2010

CHINO HILLS
0012    0001202    0126

Notice to Purchaser - In the event that this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Pay
**Three Thousand Four Hundred Eight and 50/100 Dollars**
To The
Order Of    1818 PLATINUM TRIANGLE

FROM: JESSIE GONZALEZ

BANK OF AMERICA

Remitter (Purchased By):    PLATINUM CAPITOL GROUP LLC
Bank of America, N.A.
PHOENIX, AZ

Cashier's Check - Customer Copy

Void After 90 Days

91-170/1221
NAZ

No. 0756519627
Date 02/25/19 01:26:09 PM

**$3,408.50**

Not-Negotiable
Customer Copy
Retain for your Records
457002931717

CARASCO_384

Attachment E

**SAN BERNARDINO COUNTY**

JOHN McMAHON, SHERIFF-CORONER

July 27, 2022

Jesus Carasco Booking # 2000000309
C/O Santa Ana Jail
P.O. Box 22003
Santa Ana, CA 92701

Dear Mr. Carasco:

Thank you for bringing your concerns to our attention. The Department has conducted a thorough investigation regarding your recent complaint and the Bureau Deputy Chief has reviewed it. California law restricts our ability to disclose specific details of personnel investigations. Due to such legal restrictions, the Department is limited to providing members of the public with only the following determinations specific to their matters.

The allegation addressed in the civilian complaint that Lieutenant Smith, Corporal Rose, and Corporal Awad failed to ensure that you received a pre-booking medical examination after the use of a less-lethal munition has been deemed **"Sustained."**

The allegation addressed in the civilian complaint that Lieutenant Smith and Deputy Nicassio failed to ensure an operations plan was attached to Deputy Report 611900025 has been deemed **"Sustained."**

The allegation addressed in the civilian complaint that Corporal Rose failed to collect expended Blunt Impact Projectile (BIP) rounds as evidence has been deemed **"Sustained."**

The allegation addressed in the civilian complaint that Corporal Mondragon failed to submit a copy of his audio belt recording into evidence has been deemed **"Sustained."**

The allegation addressed in the civilian complaint that Corporal Awad failed to document your injuries on your booking application has been deemed **"Sustained."**

SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT

655 East Third Street • San Bernardino, California 92415-0061    Post Office Box 569 • San Bernardino, California 92402-0569

July 27, 2022
CARASCO, Jesus
Page 2

The allegation addressed in the civilian complaint that Deputy Pollick failed to complete and submit a search warrant return within 10 days has been deemed **"Sustained."**

The allegation addressed in the civilian complaint that Deputy Nicassio failed to submit his audio belt recording of your Miranda interview into evidence has been deemed **"Sustained."**

*The allegation addressed in the civilian complaint that Deputy Nicassio used profanity during your arrest has been deemed **"Sustained."**

The allegation addressed in the civilian complaint that Deputy Nicassio failed to submit seized ammunition into evidence has been deemed **"Sustained."** This is defined as, "The investigation disclosed sufficient evidence to prove the truth of the allegation in the complaint by preponderance of the evidence."

Your allegation that Lieutenant Smith, Corporal Rose, Corporal Mondragon, Corporal Awad, Deputy Pollick, Deputy Duncan, and Deputy Nicassio stole approximately $5,000 from you has been **"Unfounded."** This is defined as, "The investigation clearly established that the allegation is not true."

Sincerely,

SHANNON D. DICUS, SHERIFF-CORONER

By: Michael Walker, Lieutenant
    Internal Affairs Division
    (909) 387-3726

SDD:MW:rs

909.884-0156

Attachment F

TRULINCS  26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

------------------------------------------------------------------------------------------------

FROM: 26019112
TO: ~~Taylor, Josphine~~
SUBJECT: DOCUMENT VERIFICATION
DATE: 08/22/2023 07:14:37 PM

To whom it may concern, (San Bernardino Court Clerk's Office) this is a formal request for copies regarding certified document verification in regards to the authenticity of the following OnStar Search Warrant (See attached documents Bates 163-171) that was purportedly signed by Magistrate Judge William Powell of San Bernardino, Central Superior Court, Dept. S18. I also request the entire Search Warrant under California Law Penal Code 1526 and 1529.

                                    Sincerely,
                                    /s/ Jesus Carasco # 26019-112
                                    MDC Brooklyn
                                    P.O. BOX 329002
                                    Brooklyn, NY. 11232

Mr. Carasco:

Please re-submit your request with the search warrant number. We can not process it without that number.

Thank you,
X Johnnie McHenry
909-521-3226

Mail - gnicassio@SBCSD.ORG

Page 1 of 2

# Vehicle Location Assistance Request VIN #1GYS4KKJ6JR318405

**Stephanie Outing (C) <Stephanie.Outing@gm.com>**

Wed 4/3/2019 2:34 PM

To:Nicassio, Gaetano <gnicassio@SBCSD.ORG>;

Cc:Antwan Richardson (C) <Antwan.Richardson@gm.com>; Jocquelyn Davis (C) <Jocquelyn.Davis@gm.com>; Keshona Matthews (C) <keshona.matthews@gm.com>; Larry David Hendrix (C) <LarryDavid.Hendrix@gm.com>; Laura Sholander (C) <Laura.Sholander@gm.com>; Rafael Valentin (C) <Rafael.Valentin@gm.com>;

1 attachments (15 KB)

COURT ORDER FEDERAL SAMPLE.docx



4/3/2019

**San Bernardino County Sheriff**
**San Bernardino, CA**

**Attention: Deputy Guy Nicassio**

**Dear Deputy Nicassio**

As we discussed, OnStar is willing to cooperate with your law enforcement agency, but requires the assistance of a **Criminal Court Order under Seal** that provides (i) sufficient legal basis for providing vehicle location information during a specified time period (**Probable Cause**), (ii) **Immunity from liability, and (iii) Compensation to OnStar.** These provisions are analogous to the wiretap statute.

We have attached a sample **Criminal Court Order Template** that meets our requirements. Currently, our fee for reimbursement is **$150 per hour.**

Once you have obtained a completed Criminal Court Order with the signature from the appropriate Judge, please email or fax a copy of the Court Order to OnStar's Special Investigations Team, at **704-510-1507.** With your Order, please provide information identifying the Officer(s) or Agent(s) who are designated as the contacts for this matter so that they may be contacted directly by the OnStar Special Investigations Team.

If you have any additional questions, please contact us at **855-498-8571** 7am-9pm (M-F) or **1-866-866-5006 option 2** outside of these hours.

https://outlook.office365.com/owa/

*Coerced Fabricated Warrant*

4/4/2019

*Exhibit C1*

CARASCO_000163

SW No: _____

STATE OF CALIFORNIA -COUNTY OF SAN BERNARDINO

# SEARCH WARRANT AND AFFIDAVIT
## (AFFIDAVIT)

**Gaetano Nicassio, Deputy,** (Affiant) swears under oath that the facts expressed by him/her in this Search Warrant and Affidavit, and the attached and incorporated statement of probable cause, are true and that based thereon he/she has probable cause to believe and does believe that the property and/or person described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

_____, **Night Service Order Requested: YES ___ NO x**

(Signature of Affiant)

# (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER IN THE COUNTY OF SAN BERNARDINO:** proof by affidavit having been made before me by **Gaetano Nicassio, Deputy,** (Affiant) that there is probable cause to believe that the property and/or person described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by "x" (s) in that:

- It was stolen or embezzled.
- **X** It was used as the means of committing a felony.
- It is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery.
- It tends to show that a felony has been committed or that a particular person has committed a felony.
- It tends to show that sexual exploitation of a child in violation of P.C. Section 311.3, or depiction of sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring.
- **X** there is a warrant for the person's arrest;

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

SEE ATTACHMENT A1

**FOR THE FOLLOWING PROPERTY:**

SEE ATTACHMENT A2

*Inconsistent Signature*

**AND TO SEIZE IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to as true and subscribed before me this 4th day of April , 20 19 , at _____ A.M./P.M. Wherefore, I find probable cause for issuance of this Search Warrant and do issue it.

_____, **NIGHT SEARCH APPROVED: YES ☐ NO ☑**

(Print Name)

Judge of the Superior Court of California, County of San Bernardino          S(8 Judicial District

SW with A1 & A2                                                           KO (04/19)

Exhibit C2

CARASCO_000164

SW No: _____

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**2018 Cadillac Escalade**
**License Plate- 8FLB018**
**Vehicle Identification Number-1GYS4KKJ6JR318405**

2018 Cadillac Escalade
Registered Owner-ACAR Leasing
Limited Leaser- J████ Ta██ █████████Irvine Ca, 92614
Vehicle Description- Black 2018 Sport Utility Vehicle

Included the above described vehicle and any, storage areas locked or otherwise.

Exhibit C3 ^A1

Magistrate Initials: _____

CARASCO_000165

SW No: _____

## FOR THE FOLLOWING PROPERTY:

1. Search for the electronic GPS coordinates from OnStar reference a 2018 Cadillace Escalade, license plate- 8FLB018, Vin#1GYS4KKJ6JR318405.

Fxihibit C4

A2

Magistrate Initials: WAP

CARASCO_000166

SW No: _____

## STATEMENT OF PROBABLE CAUSE:

On March 13, 2019, Highland Sheriff deputies responded to a call for service reference stalking. The victim, gave a description of the vehicle and suspect, later identified as Jesus Carasco 01/28/78. Carasco sent a video to the victim of him shooting a 9mm handgun out of the vehicle while driving. Deputies attempted a traffic stop on a vehicle fitting the description of the suspect's vehicle. A pursuit ensued and Carasco fled from the vehicle and escaped capture. After a several hour manhunt, deputies were unable to locate Carasco. Inside the vehicle deputies located two fired 9mm cartridges and ½ pounds of suspected cocaine. Deputies also located 2 , cellphones, one belonging to Carasco and the other to J███ D███ Ta██

Highland Station Detectives requested the assistance from the Specialized Enforcement Division (SED), Team 2, with the apprehension of Carasco.

The victim stated Carasco would frequently drive to her house in a newer style Black Cadillac Escalade, 8FLB018. Through a record check, the vehicle comes back registered to J███ T███ T██ was found to be Carasco's estrange girlfriend.

Through investigative leads, deputies were able to locate an address for Ta██ I attempted contact at the address, but the manager of the apartment complex said T██ had recently moved out. When questioned about Ta██ the manager stated T██ had a boyfriend who went by Jessie; Jesus Carasco's alias. T██ and Carasco would come and go from the location. Carasco was seen driving a Mercedes Sprinter Van and Black Cadillac Escalade; newer syle.

Deputies attempted contact at another address Jesus Curasco used, not far from Tap██ last know address. When I spoke with the property manager she stated Curasco moved out a few days ago. Curasco had a female living with him, J███ Ta██ and would frequently drive a newer style Black Cadillac Escalade, 8FLB018.

I believe based on the information provided to me Carasco is staying with T██ to avoid police capture. By authoring this search warrant, it will assist me in the apprehension of Carasco.

Carasco currently has two felony warrants for his arrest out of San Bernardino County. He is also wanted by the U.S. Marshals, Los Angeles PD and New York PD.

Exhibit C5

A4

Magistrate Initials: _____

CARASCO_000167

SW No: _____

## AFFIANT'S EXPERTISE:

Your affiant, Gaetano Nicassio, is currently employed as a peace officer with the San Bernardino County Sheriff's Department and have been a peace officer for nine years 11 years. I am a Deputy Sheriff who has been assigned to two patrol station, Twin Peaks and Central Station. I am currently assigned to the Specialized Enforcement Division. I have conducted general investigations at the station level; residential and commercial burglaries, robberies, assaults, stolen property, controlled substances violations, narcotic violations, missing persons and identity theft; however, I am not limited to those specific crimes.

Prior to that I was assigned to the Corrections and Detention Bureau at Central Detention Center and Glen Helen Rehabilitation Center in San Bernardino. While assigned to corrections, I supervised the day-to-day activities of the inmates in custody and was assigned to work in the general population area. As a Corrections Deputy I spoke to numerous felons and gang members in custody for narcotic and theft related charges. I learned ways on how they package, transport and sell the narcotics. I also was taught on how they commit burglaries, theft related crimes and how they discarded stolen property.

I have received instruction in the identification; preservation and collection of evidence, photography, latent print collection and crime scene investigations through the San Bernardino County Sheriff's Basic Academy (2006) and subsequent classes at San Bernardino County Sheriff's Advanced Officer Training and other POST approved classes, including the writing of search warrants. I have compiled information; collected evidence; interviewed victims, witnesses, and informants to support the filing of criminal complaints.

I have received instruction and training while being in the Specialized Enforcement Division on how to investigate and locate wanted fugitives utilizing different database systems.

*[handwritten: DIDN'T HE say Protocall?]*

A3

Magistrate Initials: _____

*[handwritten: Exhibit C6]*

CARASCO_000168

SW No: _____

## STATUTORY GROUNDS

Based on training, experience and the foregoing information, your Affiant states there is presently reasonable cause to believe Jesus Curasco 01/28/78, is currently driving the Black 2018 Cadillac Escalade, 8FLB018, VIN#1GYS4KKJ6JR318405 .

I believe that there is probable cause for the issuance of a search warrant as set forth in Penal Code section 1524.

_____
**Gaetano Nicassio , Deputy**
**San Bernardino County**
**Sheriff's Department**
**Specialized Enforcement Division**

Subscribed and sworn to before me this 4TH day of APRIL, 2019.

_____
**Judge of the Superior Court**
**CENTRAL Division**
**County of San Bernardino**
**State of California**

*Inconsistant Signature*

Exhibit C7

A5

Magistrate Initials: _____

CARASCO_000169

CASE NUMBER _____

# STATE OF CALIFORNIA
# COUNTY OF SAN BERNARDINO

IN THE MATTER OF THE APPLICATION
OF STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO )
FOR AN ORDER REQUIRING DISCLOSURE)
OF GLOBAL POSITIONING SYSTEM ("GPS"))
LOCATION DATA FOR A MOTOR VEHICLE)
DESCRIBED AS A [ 2018 BLACK CADILLAC ESCALADE ].
REGISTRATION [ LICENSE PLATE 8ELB018 ]
AND VEHICLE IDENTIFICATION NUMBER [ 1GYS4KKJ6JR318405 ]

    This matter comes before the Court on the Application of the State of California, County of San Bernardino for the issuance of an Order to obtain assistance for determining the location of [BLACK 2018 CADILLAC ESCALADE, SPORT UTILITY], bearing Vehicle Identification Number (VIN)[ 1GYS4KKJ6JR318405 ], hereinafter referred to as the Subject Vehicle, in connection with the investigation of [Jesus Curasco 01/28/1978], occurring in HIGHLAND, County of SAN BERNARDINO.

    The application is made pursuant to Fed. R. Crim. P. 41, and Title 28, United States Code, Section 1651, the All Writs Act. The application establishes probable cause to believe that the requested location data will constitute evidence of or lead to the apprehension of ████████. The application further shows the vehicle is owned by and registered to ██████ T███ and that a manufacturer's OnStar Global Positioning System (GPS) is already installed on the Subject Vehicle. The GPS system is serviced by OnStar, and the account for the Subject Vehicle is in the name of ██████ T███ Further, there is a need for assistance from private third parties, i.e., OnStar, to assist in locating the Subject Vehicle and a need for secrecy until the investigation is concluded, and further, that grounds exist for the issuance of this Order.

    IT IS THEREFORE ORDERED, pursuant to Fed. R. Crim. P. 41, and Title 28, United States Code, Section 1651, and Title 18, United States Code, Sections 3122-24, that any time within ten (10) days of the signing of this Order, Deputy U.S. Marshals of the San Bernardino County Sheriff's Department are authorized to direct OnStar Corporation to assist them in determining the GPS data for the Subject Vehicle for a period not to exceed 30 days from the initiation of the monitoring, unless extended by subsequent Order of this Court. The information acquired shall be specifically limited to that necessary to ascertain the real-time physical location of the Subject Vehicle. Monitoring of the Subject Vehicle's location is authorized at any time of the day or the night as required, and while the Subject Vehicle is within or outside the County of San Bernardino.



Exhibit C8

CARASCO_000170

IT IS FURTHER ORDERED that OnStar Corporation shall furnish Deputies of the [San Bernardino County Sheriff's Department / USMS Southwest Region] any information, facilities, and technical assistance necessary to accomplish the objectives of this Order unobtrusively.

IT IS FURTHER ORDERED that, upon application, OnStar or General Motors shall be compensated for reasonable expenses incurred in complying with this Order.

IT IS FURTHER ORDERED that OnStar, its affiliate General Motors, and their officers, employees, agents, or other specified persons, for providing information, facilities, or assistance in accordance with the terms of this Order, shall be entitled to immunity from any action brought against them in any court, pursuant to the immunities conferred under the United States Code, state statutes, and the common law.

IT IS FURTHER ORDERED that this Order and the Application be sealed until otherwise ordered by the Court, except one (1) copy provided to the [San Bernardino County Sheriff's Department / USMS Southwest Region ]; one (1) copy provided to OnStar.

IT IS FURTHER ORDERED that OnStar, its agents and employees, shall not disclose the existence of the GPS monitoring under this Order or the existence of the investigation to any person who is not required to affect this monitoring, unless or until otherwise ordered by the Court, and OnStar's officers, employees and agents shall use their best efforts to avoid activating any console or other OnStar lighting, auditory, or other system indicator that would notify the driver and /or occupants of the Subject Vehicle as to the OnStar GPS query that is being ordered by this Court.

IT IS FURTHER ORDERED that the United States Attorney shall keep the Court informed as to the continued necessity to keep matters under seal and shall inform the Court at once when the investigation has ended, or when there is no further need to keep these matters sealed.  IT IS FURTHER ORDERED that this Order be returned to the issuing judicial officer within 10 days after the termination of the execution of the Order.

IT IS FURTHER ORDERED that any notice required by Rule 41(f) may be delayed for up to 30 days following the expiration of this Order, in accordance with Title 18, United States Code, Section 3103a(b), by reason of the fact that immediate notification of the execution of the Order may result in flight from prosecution or may otherwise seriously jeopardize the investigation.

ORDERED this 4th day of March, 2019.

Judge of the Superior Court of California, County of San Bernardino

Exhibit C9

CARASCO_000171

SBSW 14-1298

STATE OF CALIFORNIA – COUNTY OF SAN BERNARDINO
## SEARCH WARRANT AND AFFIDAVIT
## (AFFIDAVIT)

_FILED_
_SUPERIOR COURT_
_COUNTY OF SAN BERNARDINO_
_SAN BERNARDINO DISTRICT_
SEP 16 2014
DEPUTY

Detective Edward Bachman swears under oath that the facts expressed by him/her in this Search Warrant and Affidavit and in the attached and incorporated statement of probable cause are true and that based thereon he/she has probable cause to believe and does believe that the property and/or person described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

(Signature of Affiant)

HOBBS SEALING REQUESTED: ☒ YES ☐ NO
NIGHT SEARCH REQUESTED: ☐ YES ☒ NO

## (SEARCH WARRANT)

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER, OR PEACE OFFICER IN THE COUNTY OF SAN BERNARDINO: proof by affidavit having been made before me by Edward Bachman.

that there is probable cause to believe that the property and/or person described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by "x" (s) in that:

|   | it was stolen or embezzled |
| X | it was used as the means of committing a felony |
|   | it is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery |
| X | it tends to show that a felony has been committed or that a particular person has committed a felony |
|   | it tends to show that sexual exploitation of a child, in violation of Section 311.3, or depiction of sexual conduct of a person under the age of 18 years, in violation of 311.11, has occurred or is occurring |
|   | there is a warrant for the person's arrest |

YOU ARE THEREFORE COMMANDED TO SEARCH:    (Premises, Vehicles, and Persons.)

XO Communications
Legal Compliance Team
105 Malloy Street
Nashville, Tennessee 37201
(615) 777-7879

FOR THE FOLLOWING PROPERTY/PERSON:
Subscriber names and addresses and customer service records for the following telephone numbers:

(407) 517-6307

The requested information is needed for the billing month of **February 1, 2010** through **February 28, 2010.**

AND TO SEIZE IT IF FOUND and bring it forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to as true and subscribed before me this 16 day of September, 2014, at _145_ AM PM. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_Authentic Signature_

(Signature of Magistrate)
Judge of the San Bernardino County Superior Court
San Bernardino Superior Court, Central Division

SW&A Page 2 of 6

SBSW 1 4 1 2 9 9

FILED
SUPERIOR COURT
TY OF SAN BERNARDINO
BERNARDINO DISTRICT

SEP 16 2014

_____ DEPUTY

14 - 1299

# STATE of CALIFORNIA, COUNTY of SAN BERNARDINO,
## DECLARATION and REQUEST for ORDER
### SEALING the AFFIDAVIT or PORTION of the AFFIDAVIT

Your Affiant, **Detective Edward Bachman**, requests that the following portion of the Search Warrant Affidavit / Statement of Probable Cause be ordered sealed by the Magistrate in order to implement the privilege under Evidence Code Sections 1040 to 1042 and to protect the identity of any confidential informant(s) and/or official information, pursuant to the Supreme Court decision in *People v. Hobbs* (1994) 7 Cal. 4th 948, and California Rule of Court Rule 243.1, subd. (d).

**Pages 4-6      Statement of Probable Cause**

If any of the information within the requested sealed portion of the Affidavit / Statement of Probable Cause is made public, it will reveal or tend to reveal the identity of any confidential informant(s), imp-air further related investigations and endanger the life of the confidential informant(s).

I declare under penalty of perjury that the related foregoing is true and correct to the best of my knowledge.

_____ , _16_ day of **September, 2014**, at _1345_ A.M. / P.M.
Signature of Affiant

**ORDER**

Based upon a review of the Search Warrant Affidavit this court finds that there exists an overriding interest that overcomes the right of public access to the record; the overriding interest supports sealing the record; a substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; the proposed sealing is narrowly tailored; an no less restrictive means exist to achieve the overriding interest.

Therefore it is ordered that the following portion of the Search Warrant Affidavit / Statement of Probable Cause identified as the "Confidential Attachment" be sealed and kept in the custody of the Affiant's law enforcement agency and not be made part of the public record until further order of this court or any competent court.

_____ , _16th_ day of **September, 2014**, at _145_ A.M. / P.M.
(Signature of Magistrate)
*Authentic Signature*

Judge of the Superior Court of California, County of **San Bernardino**, **Central Superior Court**, Dept. __S18__

_____ POWELL
(Printed Name of Magistrate)

TRULINCS  26019112 - CARASCO, JESUS ERIC - Unit: BRO-C-A

--------------------------------------------------------------------------------------------

FROM: 26019112
TO:
SUBJECT: Certificate of Service
DATE: 01/08/2024 08:08:58 PM

1-8-2024                                      CERTIFICATE OF SERVICE

1.  I, Jesus Eric Carasco, am over the age of 18yrs old. My address is: MDC Brooklyn 80 29th Street, Brooklyn New York
11232.

2.  I hereby certify that on January 8, 2024, I caused filing with the Court the forgoing motion under rule 33, memorandum in
support of the motion, affidavit, and supporting attachments; and I placed a sealed envelope for collection and mailing via
United States Postal Service Certified Mail (USPS tracking #: 7021 2720 0002 1891 5991) to the following:

Ronald Reagan Federal Building and United States Courthouse
411 W 4th St #1053, Santa Ana, CA 92701
Honorable James V. Selna
Courtroom 10C

This certificate is executed on January 8th, 2024, in Brooklyn, NY.  I certify under penalty of perjury that the foregoing is true
and correct.

                                                          /s/ Jesus Eric Carasco



Jesner Eric Corasco #80019-112
MDC
80 29th Street
Brooklyn, NY 11232

Ronald Reagan Federal Building
411 W 4th St #1053
Santa Ana, CA 92701
Honorable James V. Selna
Courtroom 10C

C.P.

CERTIFIED MAIL

7021 2720 0002 1891 5991

