JESUS ERIC CARASCO, PRO SE
Register No.: 26019-112
Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 8:19-CR-00169-JVS |
| Plaintiff, | **MOTION TO COMPEL DISCLOSURE OF *BRADY* AND *GIGLIO* MATERIAL** |
| Vs. | |
| JESUS ERIC CARASCO, | |
| Defendant | |

**BACKGROUND**

The defendant was convicted in this instant case in October 2021. The defendant is currently on direct appeal; at the same time; there are two ongoing motions: an ex-parte motion filed by the defendant (Dkt 182) and a Rule 33 motion by the defendant (Dkt 184). The defense recently filed three Motions to Compel Disclosure (Dkt 189, 190, 194), and an associated Petition for Writ of Mandamus (9th Cir. Case No.: 24-4104).

1   As in the previous *Brady* motions (Dkt 189, 190, 194), under *Brady v.*
2   *Maryland (373 US 83 S. Ct. 1194, 10 L. Ed. 2d 215 1963)*, *Giglio v. U.S. (405 U.S.*
3   *150 1972)*, *Kyles v. Whitley (514 U.S. 419, 437-38 1995)*, *Smith v. Roberts (115*
4   *F.3d 818, 820 10th Cir 1997)*, *United States vs. Butler (567 F.2d 885, 891 9th Cir.*
5   *1978)*, and their progeny, a prosecutor has a continuing obligation to disclose
6   favorable information to the defense, including information in the possession of
7   investigating agents like the San Bernardino Sheriff's Department (SBSD) and
8   Fullerton Police Department Investigations Bureau officers.

## CELL PHONES

11  The SBSD officers found and confiscated cell phones in the raid (Dkt 194 at
12  23). However, neither these cell phones, nor any of the information contained in
13  them, have ever been produced to the defense, despite numerous requests; and in
14  fact there are no chain of custody documents for the cell phones, implying that the
15  cell phones never made it to SBSD evidence room in the first place.
16  These cell phones would contain *Brady* information (including Mr.
17  Carasco's location history); photos of evidence that the SBSD officers
18  misappropriated during their raid; impeach the officers' trial testimony; and contain
19  photos of communications improperly omitted from the produced 3500 material
20  involving a testifying witness (B.H.).
21  Furthermore, the officers attested that the phones were connected to a
22  motion sensor camera system in the Gonzalez Apartment, which would mean that
23  they would have conclusive evidence of the individuals actually entering and
24  exiting the apartment. Mr. Carasco identifies the "two phones" that were seized
25  (CARASCO_000231 4:23-4:26, 6:57-7:08: Exhibit A). While arresting Mr.
26  Carasco, the SBSD officers confirm that one of the seized cell phones is connected

to a camera monitoring the Gonzalez apartment: "I don't know what his code is, but motion is detected on his outside camera. It's that little 'Ring' camera he's got. It's showing the guys up at the apartment right now." (CARASCO_000232 6:32-6:42: Exhibit B). Thus, the cell phones contained evidence important to establishing the ownership of the apartment and the narcotics seized in the raid. And in fact the owner of the apartment was *not* Mr. Carasco: "The other person just left right now… the owner was here too last night, the big fat guy… it's not my apartment, it belongs to Jesse Gonzalez", (CARASCO_000231 5:15-5:31, 5:48-6:16: Exhibit A).

And the recordings show that the SBSD officers are concealing the existence of a confidential informant and the related *Brady*, *Giglio*, and 3500 material. When asked under cross examination by Mr. Carasco about how the SBSD offices located Mr. Carasco at the Anaheim apartment, Dep. Nicassio testified (Dkt 154 at 145-151):

> Q: How did you get to that apartment, Mr. Nicassio?
> A: We located – during our investigation, we were able to locate your – the vehicle that we found you in, the black Escalade. We found that it was registered to your girlfriend
> …
> Q: How did you find out? Can you be more specific, please?
> A: Through our Sheriff's database system, utilizing our Sheriff's database system.
> …
> We put a license plate into a system, and any time a tow truck with ALPR, which is an automated license plate reader system
> …

1  A tow truck drove through your complex. It read your license plate, and
2  because it had a hit on your license plate, it notified me and let me know.
3  …
4  Q: You didn't go to OnStar to get a warrant for that vehicle?
5  A: No.
6  …
7  Q: Did you make a report?
8  A: Yes, I wrote a report after we found you.
9
10  Dep. Nicassio claimed that he wrote a report documenting the ALPR hit for
11 the vehicle in the Anaheim apartment, but no such report has ever been produced.
12 And in fact, the recordings of the officers at the scene of the arrest make it clear
13 that Dep. Nicassio's testimony is false: that in fact the officers paid cash to a
14 confidential informant in order to locate Mr. Carasco, and then concealed it. In the
15 recording, when asked how they locate Mr. Carasco, the officers respond that they
16 found him by paying witnesses, saying "a little bit of cash goes a long way; little
17 bit of cash for a little bit of info, works out pretty well" (CARASCO_000206,
18 'Post arrest recording' 3:00-3:47: Exhibit C). Despite this, when asked for "any
19 cooperating witnesses or informant who provided information regarding the
20 investigation of this case" and information about "any confidential informant", the
21 prosecution responded by simply saying that "we are not aware of any informants
22 being used in this case against defendant" (8:22-cv-00755-JVS Dkt 3 at 21 #24-25,
23 22 #28, 32 #28). Not only was the prosecution well aware of these recordings;
24 they were reminded of their obligation, under *United States v. Wood (57 F.3d 733*
25 *9th Cir. 1955)* and *United States v. Santiago (46 F.3d 885, 893 9th Cir. 1995)* to
26 "inquire of each government agent" for information "even when held by another
27 agency involved in the investigation" (see 8:22-cv-00755-JVS Dkt 3 at 23) —like

1   the SBSD officers who were recorded telling Mr. Carasco that they not only had,
2   but paid "cash" for, an informant.
3       The Government was alerted to the destroyed evidence (the cell phones and
4   the recordings of the purported confession) pre-trial (June 9th, 2020 Court
5   Transcript under seal at 10 lines 1-6; Case No.: 8:22-cv-00755-JVS Dkt 3 at 24-
6   26); post-trial; and at sentencing (Dkt 135 at 10 line 15 to 11 line 5), stating that
7   "in those cell phones is evidence of what was really taken from that apartment";
8   and despite that neither the cell phones nor any of their contents have ever been
9   produced. This alone is similar to the Brady violations that threw out *United States*
10  *v. Bundy*, where "surveillance-camera evidence" was withheld (*United States v.*
11  *Bundy, 968 F.3d 1019; 9th Circuit 2020*).
12      The officers go on to speculate on the recording about potentially tampering
13  with the seized cell phones: "I wonder if they're gonna want to keep these phones"
14  (CARASCO_000232 7:15-7:33: Exhibit B).[1] And, in fact, while the SBSD
15  officers claimed to book the cell phones into the evidence property room, the cell
16  phones—and the evidence they contained—were never given to the defense, and
17  there are no chain of custody forms for them.
18
19                           **MATERIALITY**
20
21      In closing arguments, the defense argued that the SBSD officers framed Mr.
22  Carasco for the apartment's illicit narcotics and firearm, saying that "the original
23  payment [for the apartment was from]… Jesse Gonzalez… it's clear that it was
24  Jesse Gonzalez's residence… does it mean that what's in the apartment belongs to

---

[1] It is unclear which branch of law enforcement "they" referred to at the time, but it appears that the SBSD officers ultimately ensured that *no* law enforcement would have access to the cell phones' content

Jesse Carasco?... Why didn't they go after Jesse Gonzalez? Jesse Gonzalez was there the same day. He only went to the right side, and Carasco went down to the car structure as Jesse Gonzalez got away." (Dkt 158 at 33, 40).

The Government responded, in summation, that "there is no evidence that Jesse Gonzalez was there on the day of the search warrant. The first I've heard of it is in the defendant saying it in his rebuttal... You are to disregard that because it's not in evidence... We haven't heard a single good reason why officers would try to frame someone for something that Jesse Gonzalez did. That apartment belongs to the defendant [Mr. Carasco]." (Dkt 158 at 45-46.)

The *reason* Mr. Carasco couldn't prove otherwise was because the defense was denied the contents of those cell phones and the associated 'Ring' camera footage. That *Brady* material would have proved who the apartment and its contents belonged to. And evidence already shows that Mr. Gonzalez, not Mr. Carasco, was the one renting the apartment. As such, it appears that the SBSD officers paid "cash" to one undisclosed informant (BH) and coordinated with Mr. Gonzalez to frame Mr. Carasco for the apartment's illicit contents.

And, although the Government claimed not to have heard of this before, Mr. Carasco stated it unambiguously in the same recordings that the Government cited earlier in summation: "the other person just left right now... the owner was here too last night, the big fat guy... it's not my apartment, it belongs to Jesse Gonzalez", (CARASCO_000231 5:15-5:30, 5:48-6:16: Exhibit A).

# REQUESTED RELIEF

As such, the defense requests that this Court order the Government to turn over all information related to the seized cell phones, including their full content and forensic images; and all information related to confidential informants or witnesses, including *Brady*, *Giglio*, and 3500 material, as well as any purported "reports" written by the SBSD officers about how they located Mr. Carasco at the Anaheim apartment.

Respectfully submitted,

/s/ Jesus Eric Carasco, Pro-Se

# Exhibit A: CARASCO_000231
Transcript:

*4:23-4:26*

Carasco: The two phones, can I…

*5:15-5:31*

Dep. Mondragon: where're the keys to the apartment? Are they on the…

Carasco: I don't… I don't have the keys

Dep. Mondragon: how don't you have the keys to the apartment?

Carasco: The other person just left right now. They went and parked--they parked across the street

Lt. Smith: Who is that?

Carasco: Jesse, the owner

*5:48-6:16*

Carasco: The owner… The owner was here too last night. The big fat guy.

Lt. Smith: yup… yup

Dep. Mondragon: You have… you have the keys… where are the keys at?

Carasco: I don't have the keys

Lt. Smith: Or we'll kick the door in; we can do that

Dep. Mondragon: we don't want to cause any damage; that's not what we're here for

Carasco: It's not my apartment; it belongs to Jesse Gonzalez

Lt. Smith: Well, you stay there, so…

Dep. Mondragon: We got you on surveillance, near the...

Lt. Smith: Got you

1   Dep. Mondragon: we've been watching you for like the last month, you know

2   Carasco: I know; it's not my apartment

3   Dep. Mondragon: we don't care whose apartment it is, at this point

4   Lt. Smith: yeah

5   Dep. Mondragon: we just want to get in safely

6   *6:57-7:08*
7   Carasco: I have no way of contacting—where are my kids? I don't know where
8   either of them are.

9   Lt. Smith: Just--it's in the phone? We'll figure it out. Which phone is it?

10  Carasco: It's, it's the one with the… it's the black case

11  *7:15-7:46*
12  Carasco: how'd you find me? Phone, or…

13  Lt. Smith: what's that?

14  Carasco: phone, right?

15  Dep. Mondragon: use your brains, bro

16  Lt. Smith: it wasn't the phone. I can tell you it wasn't the phone.

17  Carasco: I know it wasn't the phone. But it was…

18  Lt. Smith: honestly, it's just… talking to people. Seriously. Straight up talking to
19  people. I am not kidding you. The only thing is, I'm not going to rat anybody out;
20  it's up to you to figure that out. I'm just saying. A little respect goes a long ways.
21  So… you've done some people dirty. You pissed them off.

22

23

24

| | |
|---|---|
| 1 | # Exhibit B: CARASCO_000232 |
| 2 | Transcript: |

3  *6:32-6:42*
4  Lt. Smith: he's got, uh… look at… I don't know where his code is, but motion is
5  detected on his outside camera. It's that little 'Ring' camera he's got. It's showing
6  the guys up at the apartment right now.

7  *7:15-7:33*
8  [phone makes 'ding' noise]

9  Dep. Mondragon: come on, stupid

10  Lt. Smith: I wonder if they're gonna want to keep these phones.

11
12
13
14
15
16
17
18
19
20
21
22
23

# Exhibit C: CARASCO_000206, 'Post arrest recording'

Transcript:

*3:00-3:47*

Carasco: how'd you find me?

Lt. Smith: come on Jesse.  Come on, what do you think, what do you think, what's your best guess?

Carasco: fucking phone, what else?

Lt. Smith: I can tell you it wasn't the phone.  Guarantee you it wasn't the phone.

Carasco: what was it?

Lt. Smith: you got people, man.  Some people like you, but not everybody.  Sooner or later you're gonna come across somebody that's…

Carasco: Brianna?

Lt. Smith: A little bit of cash goes a long way.  Little bit of cash for a little bit of info, works out pretty well.  We've actually been tracking you… We've been tracking you ever since Highland.

August, 12, 2024

Declaration of Jesus Eric Carasco

I, Jesus Eric Carasco, do hereby swear and attest that the attached transcripts are accurate and verbatim records of words spoken in the respective recording taken by the San Bernardino Sheriff's Department officers on or around the 2019 arrest of Mr. Carasco.

I declare under penalty of perjury that the foregoing is true and correct 18 U.S.C. 1746

Jesus Eric Carasco

*[signature]*

## CERTIFICATE OF SERVICE

I, Jesus Eric Carasco, am an inmate at the Metropolitan Detention Center at 80 29th Street in Brookyn, NY 11232. I am the defendant, pro-se, in the instant case.

I hereby certify that, on August 12, 2024, I caused filing with the Court the foregoing MOTION TO COMPEL DISCLOSURE OF *BRADY* AND *GIGLIO* MATERIAL; and I placed a sealed envelope for collection and mailing via United States mail to the following:

Ronald Reagan Federal Building and United States Courthouse
411 W 4th Street Suite 8000, Santa Ana, CA 92701
AUSA Nandor Kiss;

and

Ronald Reagan Federal Building and United States Courthouse
411 W 4th Street #1053, Santa Ana, CA 92701
Honorable James V. Selna
Courtroom 10C

This certificate is executed on August 12, 2024, in Brooklyn, NY. I certify under penalty of perjury that he foregoing is true and correct.

/s/ Jesus Eric Carasco



JESUS ERIC CARRASCO PRO SE
Reg # 26019-112
Metropolitan Detention Center
80 29TH Street
Brooklyn N.Y. 11232

To: Honorable James V. Selna
Ronald Reagan Federal Building And
United States Court House
411 West 4TH Street #1053
Santa Ana, California 92701

RECEIVED
CLERK, U.S. DISTRICT COURT
AUG 19 2024
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION  BY DEPUTY

Processing

